340 So.2d 283 (1976)
John H. WHITE, d/b/a White Construction & Equipment Rental Company
v.
RIMMER & GARRETT, INC.
No. 57968.
Supreme Court of Louisiana.
November 8, 1976.
Rehearing Denied December 10, 1976.
*284 Karl E. Boellert, Camp, Carmouche, Palmer, Carwile & Barsh, Lake Charles, for plaintiff-applicant.
Noble M. Chambers, Jr., Aaron, Aaron & Chambers, Crowley, for defendant-respondent.
DIXON, Justice.
White Construction & Equipment Rental Company (hereinafter called White) entered into a subcontract with Rimmer & Garrett, Inc. (hereinafter called R & G). Prior to entering this agreement, R & G, as the successful bidder, entered into a public contract with the Louisiana Department of Highways for the construction of a portion of the I-210 bypass in Lake Charles, Louisiana. The work sectioned out by the subcontract to White was that portion of the primary contract designated as Item 203(5) which entailed excavation from a designated area and delivery of the dirt to the site of the highway construction in addition to other duties not relevant here. The approximate quantity expected to be moved was 1,738,540 cubic yards. The original subcontract provided in Article 2:

"The Subcontractor shall furnish all labor, materials and equipment and shall perform all the
Work for
ITEM # DESCRIPTION UNIT QUANTITY UNIT PRICE AMOUNT
203(5) Special Borrow Excav. CY 1,000,000 $.90 $900,000.00
203(5) Special Borrow Excav. CY 1,100,000 .895 $984,500.00
203(5) Special Borrow Excav. CY 1,200,000 .89 $1,068,000.00
203(5) Special Borrow Excav. CY 1,300,000 .885 $1,150,500.00
203(5) Special Borrow Excav. CY 1,400,000 .88 $1,232,000.00
203(5) Special Borrow Excav. CY 1,500,000 .875 $1,312,500.00
203(5) Special Borrow Excav. CY 1,600,000 .87 $1,392,000.00"

*285 Within five days of the confection of this agreement the parties signed a supplement (hereinafter referred to as Supplement I). This supplement specified that White was only to load, haul and spot-dump on the project although Item 203(5) contained other minor provisions. The supplement also provided that any special borrow located north of Interstate 10 was not to be included within the terms of the agreement. Most pertinent to this opinion, however, was the addendum to Article 2 which stated: "The minimum special borrow quantity will be 1,000,000 cubic yards."
R & G purchased the land on which the excavation was to be performed and work began in the fall of 1971. Work progressed until the spring of 1972 when disagreements arose over the area to be excavated. R & G had decided to convert the borrow pit being excavated into lakes and to develop a subdivision around them. White initially objected to the altered configuration. White then submitted thirteen demands to R & G and out of this conflict a second supplement (hereinafter referred to as Supplement II) dated April 10, 1972 was added to the contract. This second supplement, among other things, set out the parties' agreement with respect to the shape of the pit. In addition, the rate of compensation to White for his excavation work was changed from a sliding scale to a flat $.915 per cubic yard. This provision was followed by a handwritten provision initialed by the parties which appears as the italicized portion of the provision quoted below:
"2. Rimmer & Garrett, Inc. agrees to pay White Construction at a flat rate of $.915 per yard for all material removed or to be removed including material removed to date hereof. One Million Cu. Yd. Guaranteed."

Work again commenced but difficulties arose and the instant suit was filed on March 19, 1973 by White wherein he sought specific performance, accounting and, alternatively, damages. R & G reconvened alleging failure of White to abide by the conditions of the contract. White had only hauled 985,650 cubic yards by the time difficulties arose and White ceased work. White was claiming that he had the right to haul all the dirt needed for Item 203(5) with the exception of the area north of I10 and a "scraper" item which was to be excavated by R & G. The trial court denied R & G's reconventional demand and White's claim for damages for R & G's alleged acts of contract interference. The trial court held that White was entitled to $.915 per cubic yard for the difference between what White actually hauled (985,650) and one million cubic yards. However, the district judge did not dispose of White's contention that R & G had usurped White's exclusive right to haul all the dirt needed for Item 203(5) and that White was entitled to an accounting. The Court of Appeal held, among other things, that parol evidence was admissible to prove the true intent of the parties relative to White's right to do all the work for Item 203(5) and, after considering the evidence, held that White was only entitled to haul one million cubic yards of dirt. The trial court awarded White his lost profit on the dirt he was precluded from taking assessed on the difference between the amount actually hauled and one million cubic yards. We granted writs to White to review the Court of Appeal's construction of the contract and its method of assessing damages.
Generally parol evidence may not be admitted "against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since." C.C. 2276. In addition, the code provides that in construing a contract "the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences." C.C. 1945(3). Furthermore, "when there is doubt as to the true sense of the words of a contract, they may be explained by referring to other words or phrases used in making the same contract." C.C. 1948. However, it is also provided that "when the intent of the parties is doubtful, *286 the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation. C.C. 1956. Thus, unless the true intent of the parties can not be ascertained by an analysis of the contract provisions because these terms are ambiguous, parol evidence is not admissible. To hold otherwise and allow parol to explain that an unambiguous phrase means something other than its clear meaning would allow parol "against or beyond" what is contained in the contract.
As the Court of Appeal pointed out, the original contract is unambiguous and clearly provides that White has the right and duty to haul all of the dirt required for the completion of Item 203(5). The Court of Appeal also correctly held that Supplement I does not create any inconsistency but is compatible with the original contract's provision that White had the right and duty to provide all of the dirt required by 203(5). The word "minimum" does not mean "maximum," as respondent argues. The insertion of this clause in Supplement I did not modify White's responsibilities with respect to performing "all the work" but was merely an assurance given the subcontractor that the "special borrow quantity" White was entitled to haul would not be reduced below one million cubic yards by the dirt R & G was entitled to haul.[1]
The Court of Appeal, however, concluded that the insertion of the words "One Million Cu. Yd. Guaranteed" in Supplement II injected some ambiguity with respect to White's right to do "all the work" required for Item 203(5). An analysis of Supplement II and the other contractual provisions in context reveals that the purpose of the handwritten clause was to make clear that Supplement II did not modify White's right established in Supplement I to be protected against a reduction in the quantity of dirt to be moved under Item 203(5) to less than one million cubic yards. Thus, the original contract and its supplements are consistent, and parol evidence was not admissible to vary the terms of the contract.
Therefore, White is entitled to recover damages for R & G's usurpation of White's exclusive right, with some exceptions, to provide all the dirt required for Item 203(5). The Court of Appeal correctly held that the proper assessment of damages is the amount of the loss sustained and the profit of which White has been deprived. C.C. 1934. Lost profit is determined by deducting the cost of labor and materials from the total contract price. However, it was error for the Court of Appeal to assess White's lost profit on the proportionate basis of his net income experience on the job, for such a figure also includes expenses which are fixed and not variable with the amount of dirt actually hauled by White. The proper deductions only include those expenses, such as fuel, oil, truckers' salaries, etc., which would have been incurred had White completed the job. Since the parties did not present sufficient evidence for this court to review on this point, we must remand the case to the trial court for a limited introduction of evidence relative to this point.
We are compelled to remand on another point as well. The proper formula for determining the amount of cubic yards on which to assess the damages is: the amount of dirt actually used for Item 203(5) less (1) the dirt White actually hauled and was paid for (985,650); (2) the 86,000 cubic yards of fill hauled by R & G north of I-10 and (3) the amount R & G was responsible for as the "scraper"[2] item. Since the Court of Appeal opinion and relator's brief conflict as to the total amount of dirt used on 203(5) *287 and on the amount of the "scraper" item, we must remand to the district court to ascertain these figures.
Accordingly, the judgment of the Court of Appeal is reversed insofar as it denies White damages in excess of one million cubic yards and insofar as it incorrectly assessed damages, at the cost of respondent; the case is remanded to the district court for further proceedings in accordance with this opinion.

ON REHEARING
PER CURIAM.
In its application for a rehearing Rimmer & Garrett, Inc. asserted that for the purposes of trial the parties had agreed to use the yardage estimates of the Louisiana Department of Highways. In good faith both sides believed that any variations in these estimates from the final calculations would be insignificant. However, in February, 1976, Rimmer & Garrett, Inc. was advised by the Department of Highways of the final figures for the yardage actually used in Project Item 203(5). It is claimed that these figures reveal that the cubic yards of fill hauled north of I10 vary substantially from the figure of 86,000 cubic yards we utilized in our opinion. In our original opinion we stated that the case is remanded to ascertain the total amount of dirt used on Item 203(5) and the amount of the "scraper" item. In order to avoid any injustice to either party, on remand the court will not be bound by any figures mentioned in the opinion. Thus, on remand, the parties may introduce evidence to determine the figures in the formula for determining the amount of cubic yards on which to assess the damages: the amount of dirt actually used for Item 203(5) less (1) the dirt White actually hauled and was paid for; (2) the cubic yards of fill hauled by Rimmer & Garrett, Inc. north of I-10 and (3) the amount Rimmer & Garrett, Inc. was responsible for as the "scraper" item. In all other respects the original opinion is correct.
NOTES
[1] The amounts of dirt R & G was entitled to haul consist of (1) the fill north of I-10 established by Supplement I and (2) a "scraper" item dealing with R & G's duty to dig a bleeder ditch and which was agreed to orally.
[2] See footnote 1.