459 So.2d 131 (1984)
SECURITY NATIONAL BANK OF SHREVEPORT, Plaintiff-Appellant,
v.
Bennie W. TERRELL, Defendant-Appellee.
SECURITY NATIONAL BANK OF SHREVEPORT, Plaintiff-Appellant,
v.
Bennie W. TERRELL and Wanda Terrell, Defendants-Appellees.
Nos. 16560-CA to 16562-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1984.
Rehearing Denied November 29, 1984.
*132 Peatross, Greer & Hayter by L. Edwin Greer, Shreveport, for defendants-appellees.
Kennedy, Goodman & Donovan by Robert U. Goodman, John M. Frazier, D. F. Overdyke, III; and Hal V. Lyons, Shreveport, for plaintiff-appellant.
Before PRICE, FRED W. JONES, Jr. and NORRIS, JJ.
PRICE, Judge.
Security National Bank of Shreveport appeals the judgment rendered against it in favor of Bennie W. Terrell and Wanda Terrell. The trial court found that Security had breached its contract with the Terrells and that the Terrells had been damaged by the breach in the amount of $124,800.75. Security originally brought suit to enforce *133 collection of notes executed by the Terrells and the Terrells in turn reconvened in each suit alleging that they had a verbal contract with Security under which Security agreed to purchase dirt from the Terrells for use in the construction of a proposed bank building. Judgment was rendered in favor of Security on each of the three notes in dispute. It is the judgment in favor of the Terrells under the recoventional demand from which Security appeals. We affirm in part, reverse in part, and remand to the trial court.
FACTS
In the Spring of 1981, Security National Bank of Shreveport was being organized under an interim board of directors. At that time, Deartie Tucker, chairman of the interim board of directors and current chairman of the board at Security, met with Bennie Terrell concerning the construction of the bank. Tucker informed Terrell that in order to construct the bank at the site at the intersection of Blanchard Road and Hearne Avenue in Shreveport, the bank needed a large quantity of fill dirt to bring the site to ground level with the adjacent roadways. The bank also was seeking buyers of stock to provide capitalization for the bank.
Tucker had several conversations with Terrell, who was the owner and operator of a dirt pit of approximately 80 acres in the Blanchard area, about the possibility of Security purchasing dirt from Terrell. In return for Security's agreement to purchase dirt from him, Terrell agreed to purchase $50,000.00 worth of stock from the bank. Because Terrell did not have the funds available to purchase stock, Terrell borrowed $50,000.00 from Northwest Louisiana Production Credit Association.
On September 9, 1981, Terrell obtained the money for the stock purchase. On September 10, 1981, Terrell met with Edward Carter, the president and chief executive officer of Security. An agreement was reached in which the bank agreed to buy all of the fill dirt needed from Terrell who was to dig and load the dirt on trucks for the sum of $1.25 per cubic yard. In return, Terrell then purchased $50,000.00 worth of Security National Bank stock. Terrell and his family testified that Tucker had indicated to them that the bank would purchase at least 90,000 cubic yards of dirt. Both Tucker and Carter testified that the bank only agreed to purchase a minimum of $60,000.00 worth of dirt. Regardless of the actual amount of dirt involved, it is clear from the record that Security intended to purchase all the dirt it needed from Terrell.
On February 13, 1982, Security held a shareholders meeting wherein the shareholders formally ratified and approved all prior acts of the interim officers and directors. Additionally, Terrell was introduced to the shareholders as the man who was going to supply the fill dirt for the construction of the bank.
At the time that the bank officials entered into the contract with Terrell and subsequent to the agreement with him, Security was negotiating for an urban development action grant (UDAG) from the United States Department of Housing and Urban Development. Funds received from this grant were to be used to purchase the dirt necessary to construct the building and to finance installation of the city sewer system.
Tucker testified that in the spring of 1982 Security discovered that in order to take advantage of the money available from the grant, the bank had to solicit bids for the contracts involved in the construction of the building, including the contract for the purchase of dirt. According to Bennie and Wanda Terrell, Tucker assured them that this did not affect their contract with Security.
Security solicited bids for the purchase and delivery of the dirt necessary for preparation of the lot for construction for its building. Terrell did not offer a bid for the job. At the opening of bids on September 20, 1982, Trio Builders, Inc., was the second lowest bidder and was chosen by Security to provide the dirt for the lot.
*134 When Terrell discovered that Trio Builders had been awarded the dirt contract under the grant, Terrell met with the officers of Security. At the meeting, Security agreed to repurchase the $50,000.00 worth of stock which Terrell had acquired. Security alternately found buyers for all stock and also paid the interest on the $50,000.00 loan owed by Terrell to the Northwest Louisiana Production Credit Association.
The record reflects that during construction of the bank, Trio builders delivered dirt in the amount of 102,800 cubic yards.
The trial court found that if Security had purchased the dirt from Terrell at the contract price of $1.25 per cubic yard, then Terrell would have received $128,500.00. From this figure the trial court deducted $3,699.25, the direct cost of digging and loading the dirt to determine Terrell's lost profit which amounted to $124,800.75. The trial court awarded damages to Terrell and against Security in this amount. Additionally, the trial court awarded Security a judgment against Terrell for the balance due on the promissory notes, including interest and attorneys' fees. Security asserts on appeal that the contract with the Terrells is a nullity because Security's consent was vitiated by a material error of fact. Secondly, Security asserts that even if Security had breached the agreement, the trial court erred in determining the amount of damages due to the Terrells.
CONTRACT LIABILITY
Security contends that because it was unaware of the requirement for the solicitation of bids before granting a contract under UDAG regulations, it was operating under a material mistake of fact which vitiated its consent and nullified its agreement with Terrell.
Consent to a contract can be invalid if produced by an error of fact. La.C.C. Arts. 1819 and 1820. There is an error of fact when one is ignorant of a fact which exists, or believes in the existence of a fact which actually does not exist. La. C.C. Art. 1821. Not every error of fact is sufficient to invalidate the contract. La. C.C. Art. 1823 provides as follows
Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error which will invalidate it. To have that affect, the error must be in some point, such as a principle cause for making the contract, and it may be either as to the motive for making the contract, to the person to whom it is made, or to the subject matter of the contract itself.
Additionally, La.C.C. Art. 1826 establishes that the other party to the contract must have known that the error involved the principle cause of the agreement. La.C.C. Art. 1826 provides as follows
No error in the motive can invalidate a contract, unless the other party was apprised that it was the principle cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it.
Thus, a contract may be invalidated for unilateral error of fact as to the motive when the other party knew or should have known what the motive of the contract was. Ouachita Rental Company v. Trainer 408 So.2d 930 (La.App.2d Cir. 1981); Scoggin v. Bagley 368 So.2d 763 (La.App.2d Cir.1979). In the present case, it does not appear that Terrell had any knowledge of Security's intent to procure UDAG funds. Furthermore, it does not appear that the source of the money used to purchase the dirt constituted a principle cause of the contract. Officers for Security testified that they had at no time discussed the grant or any source of the money to be used in purchasing the dirt. Therefore, we find that the unilateral error of Security was not a principle cause of the agreement. We also find that from the nature of the transaction, it cannot be presumed that Terrell knew of the grant.
We find no error in the finding of the trial court that the agreement between Security and Terrell was binding and that Security breached this contract.
*135 DAMAGES
By this assignment, Security asserts that the trial court erred in determining the amount of damages due Terrell.
The trial court found the evidence showed that 102,800 cubic yards of dirt were delivered to the job site by Trio Builders. The court found that if Security had not breached its contract, Terrell would have sold and loaded this amount of dirt for Security at a cost of $1.25 per cubic yard, or $128,500.00 total. Following the Louisiana Supreme Court's opinion in White v. Rimmer and Garrett, Inc., 340 So.2d 283 (La., 1976), the trial court deducted the direct cost of digging and loading the dirt from this figure to determine Terrell's lost profit. The court found the direct costs to Terrell to be $3,699.25, thus leaving a net profit of $124,800.75 to Terrell.
Security contends that the facts reveal that the parties were contracting for a sale of goods rather than for the performance of services. Therefore, it contends that the correct measure of damages for the breach was the difference between the contract price and the market price at the time of the breach. Friedman Iron and Supply Company v. J.B. Beaird Company, 222 La. 627, 63 So.2d 144, (1953). Stated another way, Security contends that the formula used by the trial court pays Terrell for 102,800 cubic yards of dirt which he still has.
Terrell contends that the trial court was correct in applying the standard of White v. Rimmer and Garrett, Inc., supra, because the contract was essentially a contract for services. He contends that damages for an ordinary sale of goods do not apply in the present case since the sale of dirt was only a minor part of the agreement and that the actual cost of the dirt to him was negligible. Terrell further contends that the formula developed by the Friedman case is based on the premise that a seller of goods has benefited twice if he recovers the full price from a buyer who has breached his contract and yet retains the goods themselves to sell to another. This premise, he contends, is applicable only in instances where there is a constant or ready market for the commodity being sold. Terrell contends that there was no ready market for his dirt during the time frame when this contract was to be performed.
In White v. Rimmer and Garrett, Inc., supra, White entered into a subcontract with Rimmer and Garrett for the construction of a portion of the I-210 bypass in Lake Charles, Louisiana. Rimmer and Garrett purchased land on which White agreed to excavate dirt for the construction site. The Louisiana Supreme Court found that the proper measure of damages for Rimmer and Garrett's breach of their contract with White should have been determined by deducting the cost of labor and materials from the total contract price.
While the facts of White are somewhat similar in the present case, we find a fundamental difference between White and the present case. In White, the plaintiff contracted to perform services only by digging, loading, and hauling dirt from land owned by defendant to defendant's construction site. In the present case, Terrell was not only performing a service by digging and loading dirt, but also was furnishing the dirt from his land.
We find that the circumstances of this case do not fall entirely within the rule of either White or Friedman, but rather both formulas must be considered to determine the damages suffered by Terrell. The subject contract envisioned both a furnishing of services and a sale of commodity. The trial court was correct in following White in arriving at the profit anticipated by Terrell from his services of digging and loading. However, since Terrell also was obligated to furnish the necessary dirt from his pit as part of the contract price and has not been required to excavate this quantity of dirt from his property because of the breach of contract, then the market value of his dirt, if any, should also be deducted in the calculation of damages.
We do not find that there is sufficient evidence in the record to show what the *136 market value was, if any, of dirt in place at the location of Terrell's property at the time of the breach.
It is difficult for this court on appeal to determine the proper factors which should enter into the court's valuation of the dirt in the present case. Under La.C.C. Art. 1934, where the object of the contract is anything but the payment of money, the damages due the creditor for its breach are the amount of the loss he has sustained and the profit for which he has been deprived. The primary aim or principle of the law of damages for breach of contract is to place the plaintiff in the same position in which he would have been if the contract had been fulfilled, or to place the plaintiff in the position which he would have occupied had the breach of the contract not occurred. Friedman Iron and Supply Company v. J.B. Beaird Company, supra.
In order to restore Terrell to the position in which he would have been had the contract been performed and to determine the proper measure of damages, we find that the present case must be remanded to the trial court for its further consideration.
Upon remand, the trial court should adduce evidence to show whether there is a determinable value for dirt in place. Should it be determined that such a value exists, then this amount should be deducted in addition to the costs of digging and loading to arrive at the net damages suffered by Terrell.
For the foregoing reasons we affirm the judgment insofar as it declares Security National Bank liable for damages for breach of its contract with Terrell; we reverse and set aside the judgment insofar as the amount of damages awarded is concerned, and we remand the case to the First Judicial District Court for further proceedings consistent with the views expressed herein. The costs of this appeal are assessed equally between appellant and appellee. All other costs are to await final disposition of this cause.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.