STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-1403


ADONIS RAPHAEL, ET AL.

VERSUS

GERALDINE ELIZABETH RAPHAEL, ET AL.


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 00-73793, DIVISION "J"
HONORABLE KRISTIAN D. EARLES, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Michael G. Sullivan, Billy H. Ezell, and James T. Genovese, Judges.

AFFIRMED.

R. Chadwick Edwards, Jr.
Edwards & Edwards
114 East Lafayette Street
Post Office Box 217
Abbeville, Louisiana 70511-0217
(337) 893-2884
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Adonis Raphael and Victor Raphael

**Steven G. Durio**
**Robert L. Broussard**
**Durio, McGoffin, Stagg & Ackerman**
**220 Heymann Boulevard**
**Post Office Box 51308**
**Lafayette, Louisiana 70505-1308**
**(337) 233-0300**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Geraldine "Jerry" Raphael Caillier**

**GENOVESE, Judge.**

Defendant appeals a jury award of $75,000 in favor of Plaintiffs for lost profits stemming from the operation of a family funeral home business. Plaintiffs have answered the appeal seeking an increase in the lost profit jury award and damages for frivolous appeal. We affirm the jury award, deny Plaintiffs' request for an increase in the jury award, and deny Plaintiffs' request for damages for frivolous appeal.

## FACTS

Plaintiffs, Adonis Raphael (Adonis) and Victor Raphael (Victor), and Defendant, Geraldine "Jerry" Raphael Caillier (Jerry), are siblings. Their parents, Henry Raphael and Sylvania Raphael, now deceased, were the owners of three funeral homes in Louisiana–one in Lafayette, another in Jennings, and a funeral chapel in Abbeville. These businesses were included in the assets of the estates of Henry and Sylvania Raphael along with the family home and various tracts of land. Henry and Sylvania Raphael also had a daughter, Emma Taylor (Emma), who predeceased them.

Following the deaths of their parents, on January 6, 2000, Adonis and Victor filed suit against Jerry and Emma's five children for a partition of the estate assets and for an accounting.

The parties submitted the matter to mediation on May 8, 2000. As a result thereof, they executed a written compromise agreement whereby Jerry agreed to transfer all of her ownership interest in the funeral home business, the business' real estate, inventory, and other assets, to Adonis and Victor. In return, Jerry was to receive from Adonis and Victor their respective interests in four tracts of land and a payment from them of $180,000. The written compromise agreement provided for a closing on the final documents within ninety days of May 8, 2000, subject to one

1

thirty-day extension to September 5, 2000.

Adonis and Victor exercised the thirty-day extension option. Disagreements arose concerning two of the tracts of land that Jerry was to receive; consequently, the documents translative of title required to effectuate the compromise agreement were not executed by the September 5, 2000 deadline.

On September 11, 2000, Adonis and Victor filed a motion to enforce the compromise agreement. At a prehearing conference, the parties agreed to resubmit the matter to mediation. However, on January 16, 2002, after efforts toward a second mediation failed, Adonis and Victor filed a first supplemental and amending petition, requesting that the mediation agreement be enforced and asserting that they incurred damages due to Jerry's delay in completing the transfers necessary to effectuate the compromise agreement.

On March 19, 2001, the trial court heard the motion to enforce the compromise agreement, but not the remaining issues of liability and damages due to Jerry's delay, as raised by Plaintiffs' supplemental and amending petition. The trial court granted the motion and ordered the parties to sign the documents necessary to transfer their ownership interests in the assets of their parents' estates within ten days of the date of the hearing. Jerry then filed a peremptory exception of res judicata asserting that the trial court's judgment enforcing the mediation agreement effected a complete resolution of the matter. The trial court granted the exception and dismissed the remaining causes of action asserted by Adonis and Victor against Jerry. Adonis and Victor appealed the trial court's grant of the exception of res judicata, and this court reversed the trial court judgment and remanded the matter for further proceedings. *Raphael v. Raphael*, 01-1564 (La.App. 3 Cir. 5/8/02), 817 So.2d 462.

On April 5, 2001, the parties executed the partition and equalization agreement

whereby the transfer of ownership interest was accomplished, and Plaintiffs took over the operations of funeral home business from Jerry who had been exclusively operating same since September 1, 2000.

On May 9, 2005, the remaining issues of liability and damages due to Jerry's delay proceeded to trial by jury. The jury found that: (1) Jerry was liable for breaching her obligation to sign the partition and deliver possession of the business to Adonis and Victor; (2) Jerry's failure to deliver possession of the business in September of 2000 denied Adonis and Victor the ability to earn revenue; and (3) Jerry's failure to deliver possession of the business diminished Adonis and Victor's ability to conduct business or interfered with their ability to market their business or solicit clientele. The jury awarded damages of $75,000 in lost profits in favor of Adonis and Victor.

Jerry appealed the damage award as being excessive. Adonis and Victor answered the appeal, seeking an increase in the lost profits jury award and seeking damages for frivolous appeal. It is to be noted that Appellant, in her appellate brief, does not contest the jury's finding of liability. The only issue before this court is damages. For the following reasons, we affirm the jury award and deny Adonis and Victor's request for an increase in said award. We also deny damages for frivolous appeal.

## ISSUES

The issues presented for our review are: (1) whether there was manifest error by the jury in awarding Plaintiffs lost profits of $75,000; (2) whether Plaintiffs are entitled to an increase in the jury award; and (3) whether Plaintiffs are entitled to damages for frivolous appeal.

3

## LAW AND ARGUMENT

**Standard of Review**

> The standard of review for findings of the trial court has been clearly established in this circuit. A court of appeal may not set aside a judge's factual finding unless that finding was manifestly erroneous or clearly wrong. *Stobart v. State, through Dep't Of Transp. & Dev.*, 617 So.2d 880 (La.1993). "Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1111 (La.1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id*. at 1112. Furthermore, when reviewing questions of law, appellate courts are to determine if the trial court's ruling was legally correct or not. *Cleland v. City of Lake Charles*, 02-805 (La.App. 3 Cir. 3/5/03), 840 So.2d 686, *writ denied*, 03-1380, 03-1385 (La.9/19/03), 853 So.2d 644.

*Bertini v. Scaife*, 04-1229, pp. 2-3 (La.App. 3 Cir. 2/16/05), 895 So.2d 619, 621-22.

**Lost Profits**

Jerry contends that the jury's award of lost profits is excessive and not supported by the evidence in the record. Conversely, Adonis and Victor seek an increase in the lost profits awarded to them. In addressing this issue, we are guided by La.Civ.Code art. 1995 which provides that "[d]amages are measured by the loss sustained by the obligee and the profit of which he has been deprived."

In the present case, Plaintiffs and Defendant dispute the manner in which lost profits are to be calculated. Jerry contends that the appropriate measure of lost profits is "net profits" or "net loss" which she defines as "the amount of money remaining or loss incurred after all costs, depreciation, interest, taxes, and other expenses have been deducted from a business' total revenues." Stated differently, Jerry equates "net profits" with "lost profits." We disagree.

"[L]ost profits are calculated by deducting the expenses that would have been incurred if the parties had complied with the contract from the gross revenues that

4

would have been derived from the contract." *Rosbottom v. Office Lounge, Inc.*, 94-894, p. 2 (La.App. 3 Cir. 4/5/95); 654 So.2d 377, 378. Additionally, "[t]he jurisprudence is clear that fixed costs are not to be deducted from gross revenues in determining an award for lost profits. *Id.* at 379 (citing *White v. Rimmmer & Garrett, Inc.,* 360 So.2d 914 (La.App. 3 Cir. 1978). Finally, while the lost profit award may not be based upon speculation and conjecture, "the absence of independent, corroborating evidence may not be fatal to the plaintiff's burden of proof." *J.B. Talley & Co., Inc. v. Vilaret Const. Servs., Inc.*, 98-395, p. 11 (La.App. 3 Cir. 10/7/98), 722 So.2d 9, 14, *writ denied*, 99-374 (La. 3/26/99), 739 So.2d 798.

In support of her assertion that the award of $75,000 is excessive, Jerry focuses her analysis on the loss of profits from September 2000 to April 2001, which comprised the seven-month delay in carrying out the compromise agreement. Jerry argues that "[e]ssentially, [Adonis and Victor] wholly failed to prove to a reasonable certainty that they would have performed even one more funeral than [Jerry] did during this seven-month period." However, the determination of lost profits is not limited solely to the seven-month delay period. Rather, if proven, Adonis and Victor are entitled to profits which were lost after the transfers were accomplished due to Jerry's delay.

We find that the record contains ample evidence for the jury to have reasonably concluded that the loss of profits sustained by Adonis and Victor extended beyond the day the transfer of ownership interest was accomplished. Although the lost profits sustained during these seven months may be more readily determinable, "[i]n cases where direct evidence is not available to establish the exact extent of loss caused by a breach of contract, resort to customary or forseeable profit as a measure of damage is proper." *Wasco, Inc. v. Econ. Dev. Unit, Inc.*, 461 So.2d 1055, 1057 (La.App. 4

5

Cir. 1984), *writ denied*, 465 So.2d 738 (La. 1985) (citing *Folds v. Red Arrow Towbar Sales Co.*, 378 So.2d 1054 (La.App. 2 Cir. 1979); *Al Smith's Plumbing & Heating Service, Inc. v. River Crest, Inc.*, 365 So.2d 1122 (La.App. 4 Cir. 1978)). Thus, the $75,000 jury award for lost profits must be viewed considering both the seven-month period of delay, as well as lost profits sustained thereafter, to the extent that they were established by credible evidence.

Jerry contends on appeal that the documentary evidence introduced at trial, including Plaintiffs' tax returns, refutes Plaintiffs' claim for lost profits. She argues that the tax return for 2001, which encompassed nine months of operations from April 5, 2001 through December 31, 2001, revealed a loss of $19,162. Jerry also argues that the 2002 tax return only showed a profit of $1,793; and, therefore, she contends that the business was not profitable. She concludes that Adonis and Victor failed to prove that any profits were actually lost due to her delay in transferring the business.

To support her contention that the funeral homes were not profitable, Jerry hired Jeanne Billeaud, a certified public accountant, to examine the business records and to perform a lost profit analysis. In her own words, Ms. Billeaud "was retained to quantify the amount of lost profits or the profits that the Raphael brothers might have earned during the . . . seven-month period that the closing or sale of the business was delayed." Notably, her testimony at trial was expressly limited to her opinion of the profits, if any, which were lost by Adonis and Victor during this seven-month time period, and she was not able to give an opinion of what lost profits there may have been after the transfer of ownership interest occurred. Ms. Billeaud testified that the business "broke even" during said seven-month period and that there were no lost profits during that time period.

The record reveals conflicting evidence on the customary profit margin in the

6

funeral home business. Adonis and Victor both testified that it is standard in the funeral home business to earn a 65% to 70% net profit. Dr. James Caillier, Jerry Caillier's husband, who has been a licensed funeral director since 1970, testified that the national average net-profit percentage earned in the industry is only between 13% and 16%. Russell Frederick, the general manager of another funeral home located in Abbeville, testified that a 13% net profit is indicative of a successful funeral home business. Given the evidence presented, the jury was free to accept or reject either estimation in order to reach its ultimate conclusion regarding lost profits.

The jury also heard specific information on the earnings of the Raphael family's funeral home facilities from Adonis and Victor. Adonis and Victor were consistent in their testimony that the average cost of a funeral was between $4,000 and $5,000. They further testified that the profit which they made, after deducting professional services and the cost of the casket, averaged between $2,000 and $2,500. This testimony was unrefuted.

Neither party disputes that from May 2001 to December 2001 approximately thirty-four funerals were performed at the Raphael's funeral home facilities. This figure is based upon documented evidence reflected in the funeral home embalming records which the State of Louisiana requires all funeral homes to maintain. This figure, considered along with the profit margin testified to by Adonis and Victor, provides a reasonable factual basis for the jury's determination of lost profits in the amount of $75,000. The jury was also able to consider the foreseeable profits which may have been lost even after the transfer was effectuated.

Although Jerry attempted to convince the jury that the business was not profitable by the introduction of the tax returns, the jury was presented with evidence that once Adonis and Victor took over the funeral home operations, there was an

7

increase in the number of funerals handled by them and that their income and profits increased. The tax returns documented that their taxable profit of $1,793 in 2002 had increased to $24,000 by 2003. When considering the loss of profits extending after April 2001, the jury was presented with evidence that Adonis and Victor were able to increase profits from a loss of $19,000 to a profit of $24,000 in less than three years of their taking over operations. Additionally, Adonis testified that had there not been the seven-month delay in transferring the business, that it was reasonable to assume that he and Victor would have had sixty funerals in 2001, as they did in 2002.

Considering the evidence presented, it was within the jury's discretion, as the finder of fact, to determine that Jerry's delay in transferring the business resulted in a loss of profits during that seven-month period and adversely affected the profits of the business for a certain period of time thereafter.

For the foregoing reasons, we find that the jury award is not manifestly erroneous or clearly wrong. Therefore, we affirm the jury award of $75,000 in lost profits.

**Answer to Appeal**

In their answer to appeal, Adonis and Victor seek an increase in the award of lost profits. For the reasons set forth above, we find that the jury's award of $75,000 is not manifestly erroneous or clearly wrong and the evidence does not support an increase in said award.

Adonis and Victor also seek damages for frivolous appeal. Louisiana Code of Civil Procedure Article 2164 provides the authority for an appellate court to award damages for the filing of a frivolous appeal. This court recently discussed Article 2164, stating as follows:

> Louisiana Code of Civil Procedure Article 2164 provides for an award of damages for frivolous appeal. If the court feels that counsel for the appellant does not seriously advocate the position taken or that

8

the appeal was filed solely for dilatory purposes, then damages for frivolous appeal are appropriate. *Gallien v. Winn-Dixie*, 96-832 (La.App. 3 Cir. 12/11/96), 685 So.2d 531 (citing *Hampton v. Greenfield*, 618 So.2d 859 (La.1993)); *Doe v. Roman Catholic Church*, 94-1476 (La.App. 3 Cir. 5/3/95), 656 So.2d 5, *writ denied*, 95-2076 (La.11/13/95), 662 So.2d 478. However, if even the slightest justification is found for the appeal, and even if the appellant does not prevail on appeal, damages will not be awarded. *Hawkins v. City of Jennings*, 97-1291 (La.App. 3 Cir. 3/6/98), 709 So.2d 292.

*Moraus v. Frederick*, 05-429, pp. 9-10 (La.App. 3 Cir. 11/2/05), 916 So.2d 474, 481-82. The Louisiana Supreme Court has instructed appellate courts to award damages under La.Code Civ.P. art. 2164 only when an appeal is taken for purposes of delay or an appellate counsel is not sincere in the belief of the view he or she advances on appeal. *Hampton v. Greenfield*, 618 So.2d 859 (La.1993).

Although we do affirm the jury award of $75,000 in lost profits in favor of Adonis and Victor, we find that the evidence in the record of these proceedings does not warrant an award of damages for frivolous appeal. Accordingly, we deny Adonis and Victor's request for damages for frivolous appeal pursuant to La.Code Civ.P. art. 2164.

## DECREE

For the reasons set forth above, we affirm the jury award of $75,000 in lost profits in favor of Adonis Raphael and Victor Raphael against Geraldine "Jerry" Raphael Caillier. Additionally, we deny Plaintiffs' claims for an increase in the jury award and for damages pursuant to La.Code Civ.P. art. 2164 for the filing of a frivolous appeal.

Costs of this appeal are assessed against the Defendant, Geraldine "Jerry" Raphael Caillier.

**AFFIRMED.**

9