STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

SIEMENS WATER TECHNOLOGIES CORP.

VERSUS

REVO WATER SYSTEMS, LLC, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20087316
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

AFFIRMED AS AMENDED.

Alan K. Breaud
Breaud & Meyers
P. O. Drawer 3448
Lafayette, LA 70502
(337) 266-2200
Counsel for Plaintiff/Appellee:
Siemens Water Technologies Corp.

Russell Joseph Stutes  Jr.
Stutes & Lavergne, LLC
600 Broad Street
Lake Charles, LA 70601
(337) 433-0022
Counsel for Defendants/Appellants:
Revo Water Systems, LLC
Jacob J. David

**Shawn A. Carter**
**Durio, McGoffin, Stagg & Ackerman**
**P. O. Box 51308**
**Lafayette, LA 70505**
**(337) 233-0300**
**Counsel for Defendants/Appellants:**
**Revo Water Systems, LLC**
**Jacob J. David**

**Shawn A. Carter**
**Durio, McGoffin, Stagg & Ackerman**
**P. O. Box 51308**
**Lafayette, LA 70505**
**(337) 233-0300**
**Counsel for Defendants/Appellants:**
**Revo Water Systems, LLC**
**Jacob J. David**

**GREMILLION, Judge.**

The defendants/appellants, Jacob J. David and Revo Water Systems, L.L.C. appeal a jury verdict in favor of Siemens Water Technologies Corp. (Siemens) awarding Siemens monetary damages and injunctive relief. For the reasons that follow, we affirm as amended.

## FACTS

David was employed by Pure Water Solutions. In 2004, Pure Water Solutions was acquired by another business, Monosep Corporation. In 2004, David signed a confidentiality agreement with Monosep, which provided:

> (b) The term "Confidential Information" shall mean all information (whether or not specifically labeled or identified as confidential), in any form or medium, that is disclosed to, or developed or learned by, Employee in the performance of duties for the Company and that related to the present or planned business, trade secrets, products, services, customers and customers list, employees, price and cost information, marketing information, financial plans, research, research programs, apparatus, processes, techniques, technologies or developments of the Company or its subsidiaries or affiliates, or of third parties (i) with whom the Company or its subsidiaries or affiliates does business, or is preparing to do business, or (ii) from whom the Company or its subsidiaries or affiliates receives or has received information.

David was Monosep's representative for selling or leasing of portable reverse osmosis water desalination units (RO units) used on offshore facilities to produce potable water. In December 2005, Monosep was acquired by Siemens, then doing business as U.S. Filter Siemens.

The design of the RO unit was developed in the late 90s by Jason Badeaux, an employee of Pure Water Systems. In June 2006, David asked Badeaux if he could observe and assist in the construction of a unit. David's stated reason for wanting to observe and help was that greater knowledge of the unit would make him a better salesman. David was allowed to assist in the fabrication of a unit

being prepared for Shell Oil Company, one of David's customers. David submitted his resignation to Siemens in September 2006. Revo Water Systems was formed in December 2006 and entered the RO unit market in March 2007.

In mid-2008, Michael Robicheaux, the former owner of Monosep and under contract to Siemens, noticed that the RO unit business was slowing. He requested a market analysis be performed, but left Siemens before the results were reported. In July 2008, Badeaux was contacted about a problem with a RO unit at a location he was certain no Siemens unit had been leased to. He dispatched a Siemens technician to the location. That technician verified that the unit was not built by Siemens, but by a company known as Revo Water Systems. Further investigation by Badeaux convinced him that the Revo unit was a copy of the Siemens units.

Siemens instituted suit against Revo and David for breach of the confidentiality agreement, violation of the Uniform Trade Secrets Act (La.R.S. 51:1341, et seq), and "trade dress" infringement. The suit sought monetary damages and a permanent injunction. During the course of discovery, Siemens discovered that schematics of the electrical components of its unit were in David's possession, and that in March 2006, David had forwarded these diagrams to Presley Turner, with whom he founded Revo. However, it appears from the evidence that Turner was unable to print the schematics. They were nonetheless printed at some point. According to several witnesses, the wiring of the Revo unit was copied from the Siemens unit.

The matter went to trial before a jury in June 2010. The jury returned a verdict in favor of Siemens and against Revo and David. The jury found that Siemens held trade secret information regarding the RO unit; that Revo and David improperly, willfully, and maliciously took those trade secrets; and that Revo and

2

David engaged in unfair trade practices. Siemens was awarded $1,482,000 in damages. It is from this judgment that Revo and David appeal.

## ASSIGNMENTS OF ERROR

Revo and David assign the following errors:

1. The jury's findings that Plaintiff held trade secret information related to its reverse osmosis units and that Defendants willfully, maliciously, and improperly took such information were incorrect.

2. The jury erroneously found that Defendants engaged in unfair trade practices and unfair competition with respect to Siemens.

3. The jury's damage award was incorrect because it was not supported by the facts or law.

4. The trial court erred in denying Defendants' motion for directed verdict.

5. The trial court erred in denying Defendants' motion for judgment notwithstanding the verdict and/or motion for new trial.

6. The trial court erred in granting Plaintiff's request for an injunction against Defendants.

7. The trial court erred in allowing royalties beyond the trial date to be awarded to Plaintiff.

At oral argument, the parties stipulated that the issues addressed by assignments of error six and seven have been resolved. Further, no judgment was ever signed by the trial court, although the trial court ruled on these issues. We deem assignments of error six and seven abandoned.

## ANALYSIS

The first two assignments of error address findings of fact on the jury's part. These are reviewed on appeal under the manifest error standard. In ascertaining whether the fact finder's determinations are manifestly erroneous, the court of appeal will look at the record to determine whether a reasonable factual basis exists for the finding and then determine whether the record establishes that the finding is clearly wrong. *Stobart v. State through Dept. of Transp. and Dev.*, 617 So.2d 880

3

(La.1993).  The issue we must resolve, then, is not whether the jury was right or wrong, but whether is conclusions were reasonable.  *Id.*  Even if we feel that our evaluations and inferences are more reasonable than the jury's, we must still uphold the verdict where there are conflicting accounts in the record.  *Id.*  A reasonable basis for findings of fact in the record precludes us from reversing those findings.  *Id.*

We find that a reasonable basis does exist in the record to support the jury's findings.  The timing of David's departure from Siemens after e-mailing the wiring schematics to his future co-member of Revo, Turner, coupled with his expression of interest in learning how the units are constructed shortly before he departed Siemens, lends credence to the notion that in the months leading up to his departure, David was preparing to enter into direct competition with Siemens using Siemens' own schematics and methods.  The fact that David contacted an attorney to determine whether entering into competition with Siemens by copying Siemens' units bolsters this notion.  There certainly were explanations by David for his conduct and the actual innocence of his actions, but these were subject to the jury's determinations of credibility.  Apparently, the jury did not believe David's explanations.  There was no manifest error in the jury's determinations regarding the existence and protection of a trade secret by Siemens or regarding their misappropriation by appellants.

The third assignment of error addresses whether Siemens supported its claim for damages.  Siemens introduced into evidence proof of the profits generated by Revo.  It offered no proof of any loss of its own.  Appellants contend that Siemens must prove that it was damaged.

Misappropriation of trade secrets is governed by the Uniform Trade Secrets Act.  Louisiana Revised Statute 51:1433 provides that, in addition to injunctive

relief, a complainant under the act may recover damages for actual loss and for the unjust enrichment caused by misappropriation. Appellants contend that Siemens is not entitled to recovery for unjust enrichment because of limitations upon that theory of recovery found in the Louisiana Civil Code. Article 2298 of the Civil Code provides that the remedy for unjust enrichment is "subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." This seems to preclude for recovery for unjust enrichment because other remedies exist for Siemens, but for the fact that La.R.S. 51:1433 specifically allows for it. The more specific statue controls.

One proper measure of damages for misappropriation of a trade secret is the profit derived from the misappropriation. Profits, being susceptible of calculation, are reviewed under the manifest error-clearly wrong standard, rather than the more deferential abuse of discretion standard. *See Raphael v. Raphael*, 05-1403 (La.App. 3 Cir. 5/3/06), 929 So.2d 825. Indeed, in this matter, the profit realized by Revo was reduced in a clearly written and understandable format. On cross-examination, David authenticated the balance sheet of Revo, which indicated a profit of $883,962.71. This was the only evidence presented regarding Revo's profit. However, several expenses claimed by Revo were argued by Siemens to be personal expenses of David's, including the cost of a motor home, the cost of a duck hunting lease, fees paid to a duck hunting guide, and meals and entertainment expenses in excess of $210,000.00 over a roughly three year period. It appears that the jury concluded that Siemens was correct and these expenses should be considered in determining Revo's actual net profit. The jury apparently also extrapolated additional profits from the April 22, 2010 end date of the balance sheet through the June 2010 trial.

We are unable to ascertain from the record the method by which the jury arrived at the figure it awarded. The record does not support the finding that any of Revo's expenses were not business related. For instance, David was questioned about the company's claim for expenses associated with the motor home. He testified that he used the motor home to entertain clients by taking them to football games and other recreational pursuits. He also testified that the duck lease and guide served to entertain clients. These expenses allowed Revo to cultivate relationships with clients, which in turn led to more business. This testimony was uncontradicted. Only the argument of counsel suggested the illegitimacy of the expenses. We find the jury was clearly wrong in its calculation of damages of $1,482,000.00 when the evidence presented demonstrated a maximum profit of $928,160.84.

Revo posted a 40-month profit of $883,962.71. This would yield a monthly profit of $22,099.07. We agree that the jury properly extrapolated the profits from the end date of the balance sheet through the date of trial. Accordingly, we amend the jury's award in favor of Siemens and against Revo to $928,160.84.

Appellants further argue that even if unjust enrichment is available to Siemens, La.R.S. 51:1433 limits it to the time it would have taken Revo to discover the trade secret without David's misappropriation. They base this argument on comment (a) of section 1433. We note, however, that the statute's wording does not support this interpretation. It provides, "A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss." Nothing in the wording of section 1433 limits the unjust enrichment element other than prohibiting double recovery. Additionally, had the legislature intended to limit the unjust enrichment, it could easily have done so as it limited the time during which injunctive relief may be

6

granted in such cases. *See* La.R.S. 51:1432. Accordingly, while it is true that, as testified to by Mr. Larry Blanchette, an engineer with Associated Design Group, a consulting engineer could have developed a competing design at a minimal cost, it is equally true that Revo did not undertake such a process and instead chose to profit from more expedient means.

This assignment of error is without merit.

Our determinations regarding the jury's verdict on assignments of error one through three renders assignments of error four and five moot.

## CONCLUSION

The jury's findings on the misappropriation of trade secrets and damages are subject to review under the manifest error standard. We find that a reasonable basis exists in the record to support the jury's findings. The judgment is affirmed, but we amend the jury's award in favor of Siemens and against Revo to $928,160.84. Costs of this appeal are taxed to appellants, Jacob David and Revo Water Systems, L.L.C.

**AFFIRMED AS AMENDED.**

7