654 So.2d 377 (1995)
Harold L. ROSBOTTOM, Sr. d/b/a Automatic Amusement Company, Plaintiff-Appellee,
v.
The OFFICE LOUNGE, INC., Defendant-Appellant.
No. 94-894.
Court of Appeal of Louisiana, Third Circuit.
April 5, 1995.
Rehearing Denied June 7, 1995.
*378 Franklin H. Spruiell Jr., Shreveport, for Harold L. Rosbottom, Sr. dba Automatic Amusement Co.
Charles Wilson Seaman, Natchitoches, for the Office Lounge, Inc.
Before COOKS, WOODARD and PETERS, JJ.
WOODARD, Judge.
The issue on appeal is the amount of damages plaintiff is entitled to because of defendant's breach of contract.

FACTS
The plaintiff, Harold Rosbottom, Sr., the owner of Automatic Amusement Company (Automatic), entered into a contract with the defendant, The Office Lounge, Inc. (Office), whereby Automatic was given the exclusive right to operate three video poker machines at Office. The contract provided for a term of thirty-six months, and after payment to customers the gross revenue would be divided as follows: 22.5% to the Louisiana State Police; 38.75% to Office; and 38.75% to Automatic. Office breached this contract when it allowed Reliable Amusement Company (Reliable), a competitor of Automatic, to place its machines at Office under a similar contract in January 1993. Subsequently, the trial court granted Automatic a permanent injunction against Office, restraining the latter from allowing anyone other than Automatic to place video poker machines there. Notwithstanding, Office continued to allow Reliable to operate its machines and refused Automatic's requests to install its machines.
Automatic also filed a claim for damages against Office for breaching their contract. At trial on this issue, both parties stipulated that Reliable's share of the gross revenue generated by its three poker machines from January 1993 through November 30, 1993 was $8,548.36. The trial court rendered judgment on March 23, 1994, finding that Automatic was "damaged in the gross amount of $8,548.36" and that the only business expense Automatic would have incurred was a monthly operating fee of $75.00, or a total expense of $825.00 as of November 30, 1993. Therefore, the trial court awarded Automatic: (1) $7,723.36 (8,548.36-825.00) in lost profits through November 1993 and (2) gross revenues generated by the poker machines, less the monthly operating expense of $75.00, from December 1993 until Office allowed Automatic to install its machines. In April 1994, Office ordered Reliable to remove its poker machines and allowed Automatic to install its machines.
Office now appeals and asserts the following assignments of errors: The trial court erred in finding that (1) the only business expense Automatic would have incurred was a monthly operating fee of $75.00 and (2) Automatic was entitled to gross revenue generated by Reliable's poker machines, less the monthly $75.00 expense, from December 1993 until Office allowed Automatic to install its poker machines.

LAW
Loss of profits is a recoverable item of damage in an action for breach of contract. La.Civ.Code art. 1995. In general, lost profits are calculated by deducting the expenses that would have been incurred if the parties had complied with the contract from the gross revenues that would have been derived from the contract. See Spence v. Webster Parish School Board, 499 So.2d 217 (La.App. 2 Cir.1986). While damages for loss of profits may not be based on speculation and conjecture, such damages need only be proven within a reasonable certainty. Landry v. Bourque, 460 So.2d 33 (La.App. 1 Cir.1984), writ denied, 464 So.2d 1378 (La. 1985). "A party's own detailed testimony as to proof of loss may be sufficient to support *379 an award." Ed Bulliard Co. v. Foretich-Zimmer Const., 451 So.2d 29, 31 (La.App. 3 Cir.), writ denied, 456 So.2d 169 (La.1984). An appellate court will not disturb damage awards in the absence of a manifest abuse of discretion. Id.
Automatic concedes in its brief that the trial court erred in deducting only the monthly operating fee of $75.00 from the stipulated gross revenues in determining lost profits. Automatic admits that in addition to that expense, it would have incurred a one-time $150.00 installation fee and a monthly $50.00 phone line charge directly attributable to operating its poker machines at Office. Automatic acknowledges that the trial court's judgment should be amended to properly reflect these additional expenses; therefore, reducing the award of lost profits to $7,073.36. We agree.
Office, however, contends that the following expenses should also be deducted from gross revenues, namely: (1) overhead, such as management expenses and the cost of the video poker machines; (2) depreciation of the poker machines; and (3) the license fee for the poker machines. We disagree for the following reasons.
The jurisprudence is clear that fixed costs are not to be deducted from gross revenues in determining an award for lost profits. White v. Rimmer & Garrett, Inc., 360 So.2d 914 (La.App. 3 Cir.1978). Fixed costs include overhead and depreciation expenses. Black's Law Dictionary 637 (6th ed. 1990). Regarding the yearly $3,150 license fee for the three poker machines, Rosbottom clearly stated that: (1) after 22.5% of the gross revenues were paid to the state police, the license fee would be split "fifty/fifty" by Office and the owner of the machines and, (2) after the license fee was deducted, the revenues would then be divided among the parties. Thus, the trial court did not err in refusing to deduct the license fee from the stipulated gross revenues in determining lost profits.
As previously stated, the trial court awarded Automatic an award of lost profits from January 1993 through November 30, 1993. Nevertheless, Office continued to breach its contract with Automatic and also the permanent injunction until April 1994, when it finally allowed Automatic to install its poker machines. Therefore, Automatic is also entitled to an award of lost profits from December 1993 through April 1994; thus, the trial court did not abuse its discretion in awarding lost profits until Office complied with the terms of its contract with Automatic. However, there is no evidence in the record indicating Reliable's gross revenues during this time. Any award of lost profits from December 1993 through April 1994 would be speculation on our part, and we cannot award damages based on speculation. Landry, supra. Therefore, we remand this case to the trial court with instructions to hold an evidentiary hearing to determine Reliable's gross revenues during this time and to award lost profits to Automatic by deducting the relevant expenses as enunciated in this opinion.

CONCLUSION
For the foregoing reasons, the judgment of the trial court awarding Automatic lost profits of $7,723.36 from January 1993 through November 30, 1993 is amended to $7,073.36, reflecting the $150 installation fee and the monthly $50 phone charge Automatic would have incurred during this time, in addition to the $75.00 operating expense that the trial court deducted. Further, we remand this case to the trial court to hold an evidentiary hearing to determine Reliable's gross revenues on the poker machines from December 1993 through April 1994 and to award lost profits to Automatic by deducting the relevant expenses as enunciated in this opinion. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal and the evidentiary hearing are assessed against the defendant, The Office Lounge, Inc.
AFFIRMED IN PART; AMENDED IN PART; AND REMANDED.