| THIBODEAUX, J.,
concurring in part and dissenting in part.
I agree that Wafer is bound to Foster for expenses totaling $2,262.30. However, I disagree with the majority’s conclusion that Wafer is indebted to Foster for $28,008.50.
The Louisiana Civil Code provides for invalidation of a contract if error affects the cause of the contract. “Cause is the reason why a party obligates himself.” La.Civ.Code art. 1967. Civil Code Article 1949 restates the principles set forth in Articles 1823, 1825 and 1826 of the 1870 Code, and it provides:
Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party.
“Civil Code Article 1825 (1870) provides that the ‘principal cause’ must be affected by error in order to invalidate the contract.” La.Civ.Code art. 1949 |2(comment (e)). The “principal cause” is the reason for making the contract; without such a cause the contract would not have been made.
La.Civ.Code art. 1950 states, in pertinent part:
Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person ... or any other circumstances that the parties regarded or should in good faith have regarded, as a cause of that obligation.
“Error makes the contract annullable when it concerns the act of will through which the party bound himself.” Id. at comment (f).
*1278 These articles and the supplemental comments associate “cause” with “reason.” Former Louisiana Civil Code Articles 1823, 1825 and 1826 associated “cause” with “motive.” See Litvinoff, Louisiana Civil Law Treatise: Obligations § 290, pp. 522-23 (1969). To have the effect of invalidating a contract, error must be in regards to the principal cause of the contract, and that cause was known or should have been known to the other party. Sonnier v.. Boudreaux, 95-2127 (La.App. 1 Cir. 5/10/96); 673 So.2d 713.
The reason, or the cause, for the contract is an existing and an understood condition of the agreement. I find this conclusion self-evident in this case because the cause for Wafer entering into the contractual agreement with Foster Construction was obviously to construct a building which would operate as a restaurant in Alexandria, Louisiana. If the cause fails, in this case, if construction of the building fails, then the purpose is vitiated, thereby resulting in the collapsing of the contract. Wafer and Hammond entered into the contract dated September 24, 1997 with the understanding of the end that was sought-a restaurant in an impoverished area of Alexandria. It is clear that the cause of the contract failed ^because Wafer was unable to procure financing from a lending institution in order to pay to have the restaurant built.
Focus must be placed on Wafer’s inability to secure financing for construction of “The New Orleans Connection Restaurant.” My review of the record reveals that Wafer and Hammond entered into a contract which contained an implication that construction of the restaurant was contingent upon Wafer obtaining a loan. Therefore, Wafer’s obligation to pay Foster Construction could not be enforced until he obtained a loan for the contract price. Likewise, Wafer could not enforce Foster Construction’s obligation to construct the building until he was able to pay the contract price. This situation presents a suspensive condition. See La.Civ.Code art. 1767. A suspensive condition that is impossible makes the obligation null. La. Civ.Code art. 1769. “When the occurrence of the suspensive event in the context of a conditional obligation becomes impossible, the obligation ceases to exist.” O’Neal v. Chris Steak House, Inc., 525 So.2d 325, 328 (La.App. 1 Cir.1988) (citations omitted).
Wafer, in good faith, applied for loans at Hibernia Bank and at First National Bank of New Orleans, and both denied his application for funding. After these failed attempts to secure financing, Wafer concluded that it would be impossible for him to afford the construction of the restaurant. Wafer testified that he informed Hammond about the banks’ denial of his applications and, according to Wafer, he told Hammond that he was continuing the process of trying to get funding. Hammond did not refute this. Hammond admitted that he spoke to Mr. Martin at Hibernia Bank; however, he claims that Mr. Martin did not tell him that Wafer could not secure financing. Hammond did, however, testify that he could not recall whether Wafer told him that he was unable to get a funding from either bank.
j4It is longstanding law that “[interpretation of a contract is the determination of the common intent of the parties.” La. Civ.Code art. 2045. The controlling rule for clarification of contracts is that courts must seek and comprehend the mutual intention of the parties, if that is possible. Osborne v. Ladner, 96-0863 (La.App. 1 Cir. 2/14/97); 691 So.2d 1245. In this case, the record shows that the intent of Wafer and Foster Construction was to transform Wafer’s idea of constructing a restaurant into reality. Through no fault of either party, it became impossible for Wafer to give birth to his idea. Even the testimony of Foster Construction’s president, Michael Foster, is in accordance with the intentions of Wafer. Foster admitted that had he known that Wafer was unable to procure funding, this knowledge would have influenced his decision as to whether *1279 to file suit. But for the construction of the restaurant, Wafer would not have needed to secure funding from the banks.
My conclusion is jurisprudentially supported. In Nugent v. Stanley, 336 So.2d 1058, 1063 (La.App. 3 Cir.1976), our fore-brothers held, “The jurisprudence ... establishes that a contract may be invalidated for unilateral error as to a fact which was a principal cause for making the contract, where the other party knew or should have known it was the principal cause.” See La.Civ.Code art. 1949 (comment (d)).
Marcello v. Bussiere, 284 So.2d 892 (La.1973) illustrates such an invalidation. In Marcello, the defendants, Mr. and Mrs. Bussiere, entered into a written agreement with Marcello to purchase a bar-lounge. After purchasing the facility, which included the bar equipment, and after completing some remodeling, the defendants could not obtain a liquor permit for the business. The plaintiff eventually filed suit, praying for the unpaid balance on a two-year lease. The trial court granted a judgment in the plaintiffs favor. The supreme court held that the |sseller-sublessor knew or should have known that the inability of the buyer-lessees to obtain an alcoholic beverage license supported a finding of error in the determining motive of the contract; therefore, the contract was rescinded.
The defendant, Uddo, in Guaranty Savings Assurance Co. v. Uddo, 386 So.2d 670 (La.App. 1 Cir.), writ denied, 389 So.2d 1126 (La.1980), entered into a lease contract with the intention of opening a lounge on the premises. The court of appeal held that the principal cause or motive for the contract to lease Guaranty’s premises was to build a lounge as part of and separate from the restaurant, and that Guaranty was aware of Uddo’s intention. The court also found that Uddo was entitled to rescind the lease contract because of his inability to obtain a permit for serving alcoholic beverages on the premises.
“Intent is an issue of fact which is to be inferred from all of the surrounding circumstances.” Hampton v. Hampton, Inc., 97-1779, p. 5 (La.App. 1 Cir. 6/29/98); 713 So.2d 1185, 1189 (citations omitted). Foster Construction, through Hammond, knew that Wafer’s intentions for entering into the contract was to build a restaurant. Foster Construction was also fully aware that the contract it entered into with Wafer provided that payments were to be made on or before the tenth of each month, with the last payment due thirty days after completion of the project. According to this section of the contract, Wafer had to have funding during the construction of the restaurant. Thus, if Wafer could not obtain financing, then Foster Construction could not be paid the contract price. I, therefore, conclude that the trial court erred in finding that Wafer’s inability to secure financing was not a valid cause to invalidate the construction contract signed by Wafer and Hammond.
The trial court also erred in awarding Foster Construction 28,008 .58 for lost profits.
| (/‘Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived.” La.Civ. Code art. 1995. Lost profits are determined by deducting the expenses that would have been incurred if the parties had complied with the contract from the gross revenues that would have been derived from the contract. Rosbottom v. Office Lounge, Inc., 94-894 (La.App. 3 Cir. 4/5/95); 654 So.2d 377. Wasco, Inc. v. Economic Dev. Unit, 461 So.2d 1055 (La.App. 4th Cir.1984), unit denied, 465 So.2d 738 (La.1985), provides that a claim for loss of profits will not be supported by mere estimates of loss.
In its “Written Reasons for the Judgment,” the trial court conceded that “Wafer did not have his funding situation finalized at the time the parties entered into the contract.” Wafer’s inability to obtain funding was a valid cause to invalidate the contract, and I find a showing of good faith effort on the part of Wafer. There was no *1280 evidence adduced that demonstrated that Foster Construction was sabotaged by or that it suffered any damages as a result of Wafer’s lack of funding.