STEWART, J.
hThe plaintiff, First Alarm Fire Equipment, Inc. (“First Alarm”), filed suit against the defendant, Southland International of Louisiana, Inc. (“Southland”), for damages from the alleged breach of a contract which gave First Alarm the option of “first choice” in purchasing trucks owned by Southland. Southland filed a motion for summary judgment on the grounds that First Alarm would be unable to prove that it sustained any damages from the alleged breach. The trial court granted the summary judgment and dismissed First Alarm’s claims. On this appeal by First Alarm, we affirm the trial court’s judgment.
FACTS
First Alarm, a company located in Jonesboro, Louisiana, buys and converts used trucks into fire trucks for fire departments. Southland is a new and used truck dealer with locations in Gray and Harahan, Louisiana. In 1998, Southland sold a fleet of new trucks to the Louisiana Department of Agriculture (LDA). As trade-ins, it received 86 used 1991 Ford F-800 trucks. Southland did not receive the trucks all at once. The trade-ins were received as the new trucks were manufactured and put into use by the LDA.
In March 1998, Roger Young, First Alarm’s president, called Ed Burgard, Southland’s sales manager, about the possibility of buying the used LDA trucks. On April 17, 1998, Burgard faxed five pages to Young. The message on the fax cover sheet stated as follows:
ATTACHED IS A COPY OF BUYER’S ORDER.
PER YOUR REQUEST: I-10 UNITS
II-20 UNITS
21-UNITS
*1170 |2YOU WILL HAVE 1ST. CHOICE ON THESE UNITS. WE WILL KEEP YOU UP TO DATE WHEN PRODUCTION GETS CLOSER.
Also faxed was a two-page “vehicle buyers order” dated 4-17-1998. The order provided, in pertinent part, as follows:
1991 FORD F800-188" WB- 1-10 UNITS-YOUR CHOICE $13,500.00
1-20 UNITS- $13,250.00
21-30 UNITS- $13,000.00
30 OR MORE $13,000.00
(STATE OF LA-TRADE-IN’S)
(SEE LIST ATTACHED W/SERIAL # & SPECIFICATIONS)
[[Image here]]
The front and back of this Order comprise the entire agreement affecting this purchase and no other agreement or understanding of any nature concerning same has been made or entered into, or will be recognized. I hereby certify that no credit has been extended to me for the purchase of this motor vehicle except as appears in writing on the face of this agreement.

THIS ORDER IS NOT A BINDING CONTRACT.

The document was signed by Burgard as salesman. Attached was a two-page list of the trade-in vehicles. On May 4, 1998, Young signed the order and faxed it to Burgard.
In January 1999, Southland sold seven of the trucks to First Aarm, which paid $13,000 per truck. Young rejected another truck offered to him because it had a broken windshield. In March 1999, First Aarm purchased another three trucks for $13,000 per truck. Prior to this purchase, Young learned that Southland sold the remaining 76 trucks to another party.
In January 2000, First Aarm filed suit against Southland, alleging breach of contract. It requested damages for the loss of the profits it would have earned had it been able to purchase and resell the trucks. It further | .¡requested damages for Southland’s bad faith breach of contract, as well as attorney fees.
In its answer, Southland denied that there was a contract to sell all of the LDA trucks to First Aarm. It also asserted numerous defenses. Among these, South-land contended that even if a contract to sell existed between the parties, First Aarm had no claim for consequential or incidental damages, loss of profits or attorney fees. Additionally, Southland alleged that First Alarm’s alleged damages were “purely speculative and unrecoverable.”
In January 2008, Southland filed a motion for summary judgment. It argued that First Aarm could not prove that it had a contract for the purchase of the remaining 76 trucks. Southland also contended that First Aarm could not prove that it sustained any damages resulting from the alleged refusal to sell the remaining 76 trucks to First Aarm. The matter was argued before Judge Jimmy Teat in March 2008. In September 2008, Judge Teat filed written reasons for judgment wherein he denied summary judgment, finding that “there are many genuine issues of material fact.” Judgment in conformity with the written reasons was signed on February 3, 2009.
In October 2011, Southland filed a motion to recuse Judge Teat; the motion was granted. The case was reassigned to Judge Jenifer Ward Clason, and a bench trial was set to commence on April 9, 2012.
*1171 In February 2012, Southland reurged its motion for summary judgment. Southland did not reurge its argument that there was no proof of La contract between the parties for the sale of the remaining 76 trucks. Instead, it claimed only that First Alarm could not carry its burden of proving that it sustained damages as a result of the alleged breach of contract. Southland asserted that, at a minimum, it was entitled to a partial summary judgment striking First Alarm’s claim for lost profits on the grounds that it had no admissible evidence to establish that it sustained any loss of profits in this matter. In support of its motion, Southland submitted a variety of exhibits including numerous depositions and financial documents.
On March 13, 2012, the motion was argued. Southland contended that First Alarm could not prove an essential element of its claim, i.e., that it suffered damages. Specifically, Southland asserted that of the 10 trucks First Alarm purchased and retrofitted, it took six years to sell the two that were not presold. Additionally, First Alarm’s financial records demonstrated that it did not have the money to purchase the additional 76 trucks and it never sought financing to obtain them. Southland argued that First Alarm could only speculate that it might have made a profit and that such speculation was insufficient to prove damages.
First Alarm contended that it had a binding contract with Southland and that it was allowed to purchase 10 of the trucks for $13,000, the per unit price for purchasing 21 units or more. First Alarm further maintained that the deposition testimony it submitted in opposition to Southland’s motion for summary judgment showed that there were several sources from which it could have readily obtained funds to purchase the remaining trucks’ had | ¿Southland not sold them to a competitor. Additionally, it argued that it could prove the loss of profit through Young’s testimony, which the court could accept or reject. However, such a determination would require a credibility call, which would be inappropriate on a motion for summary judgment.
The trial court expressed concern that First Alarm had not developed the mathematical evidence of lost profit in the 12 years since it filed suit and that it would be “pulling things out of the air” in order to determine whether First Alarm sustained damages. The court noted that First Alarm had not had an accountant prepare a lost profits summary under La. C.E. art. 1006. The trial court granted Southland’s motion. On March 21, 2012, the trial court signed a judgment granting summary judgment in Southland’s favor and dismissing First Alarm’s claim with prejudice at its cost.
First Alarm appeals.
DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Costello v. Hardy, 2003-1146 (La.1/21/04), 864 So.2d 129. A court must grant a motion for summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). Summary judgment procedure is 1 flavored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2); Mosley v. Temple Baptist *1172 Church of Ruston, Louisiana, Inc., 40,546 (La.App.2d Cir.1/25/06), 920 So.2d 355.
However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense. The party opposing summary judgment cannot rest on the mere allegations or denials in his pleadings, but must show that he has evidence which, if believed, could satisfy his evidentiary burden of proof at trial. If he has no such evidence, then there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2); Eason v. Finch, 32,157 (La.App.2d Cir.8/18/99), 738 So.2d 1205, writ denied, 99-2767 (La.12/10/99), 751 So.2d 861; Thielmier v. Louisiana Riverboat Gaming Partnership, 31,739 (La.App.2d Cir.3/31/99), 732 So.2d 620; Mosley, supra.
On a motion for summary judgment, the district court cannot make credibility determinations or weigh conflicting evidence. In deciding a motion for summary judgment, the district court must assume that all affiants are credible. Nicholson v. Horseshoe Entertainment, 46,081 (La.App.2d Cir.3/2/11), 58 So.3d 565, writ denied, 2011-0679 (La.5/20/11), 63 So.3d 980; Russell v. Eye Associates of Northeast Louisiana, 46,525 (La.App.2d Cir.9/21/11), 74 So.3d 230.
Whether First Alarm was granted a right of first refusal and whether South-land breached the contract that granted that right are not at issue on the motion for summary judgment. At issue is whether First Alarm will be able to prove that it sustained any damages from the alleged breach of the right of first refusal, or first choice, on the trucks.
The plaintiff has the burden of proving the damage suffered by him as a result of a breach of contract. Jackson v. Lare, 34,124 (La.App.2d Cir.11/1/00), 779 So.2d 808. Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived. La. C.C. art.1995. When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages. La. C.C. art.1999.
In general, lost profits are calculated by deducting the expenses that would have been incurred if the parties had complied with the contract from the gross revenues that would have been derived from the contract. Rosbottom v. Office Lounge, Inc., 94-894 (La.App. 3d Cir.4/5/95), 654 So.2d 377. Loss of profits must be proved with reasonable certainty and cannot be based on speculation or conjecture. Simpson v. Restructure Petroleum Marketing Services, Inc., 36,508 (La.App.2d Cir.10/23/02), 830 So.2d 480; Rosbottom, supra. A party’s own detailed testimony as to his loss may be sufficient to support an award for loss of profits. Rosbottom, supra. But generally a claim for lost profits cannot rest solely on the testimony of the |sinjured party without being substantiated by other evidence. Simpson, supra. The “lack of even a minimal degree of detail or specificity as to the extent of loss precludes an award.” Jackson, p. 8, 779 So.2d at 814.
First Alarm argues that the evidence it presented in opposition to the motion for summary judgment established that there are genuine issues of material fact as to whether it could have made a profit on the additional trucks, thus precluding summary judgment. It points to *1173 evidence indicating that it could have obtained financing to purchase more than the 10 trucks it bought from Southland. First Alarm also asserts it could have made a profit of $10,000 to $15,000 per truck on any additional truck it could have purchased. These arguments lack merit.
The evidence submitted in support of and in opposition to summary judgment shows that First Alarm never agreed to purchase a specific number of trucks. At most, Young indicated to Burgard that he was “pretty sure” he wanted all the trucks. This suit was premised on the claim that First Alarm wanted and was denied the right to buy all the trucks. However, by the time of arguments on the motion for summary judgment, the claim was that First Alarm would have perhaps purchased 25 trucks. Essentially, First Alarm would leave it up to the trial court to determine the number of trucks that it could have bought and the profit it could have made.
Young presented evidence that showed First Alarm made a profit on the trucks sold to Catahoula Parish. It made a profit of $13,793 on each of the three pumper trucks and $9,600 on each of the five tanker trucks. Young estimated that First Alarm could have made $10,000 to $15,000 per 18truck if it had purchased all of them. He indicated that he planned to sell the chassis of some of the trucks and that he would have made at least $5,000 to $8,000 per chassis. We note that it took First Alarm six years to finally sell all 10 of the trucks it purchased.
Even though First Alarm may have made a profit on the 10 trucks it purchased and sold, the evidence offered shows that it had no firm plans for profiting from any additional trucks it might have purchased from Southland. In his deposition, Young testified that he planned to keep some of the trucks (30 to 40) to refurbish and sell the rest (36 to 46) as is. He claimed that he had contacted potential buyers, such as a guy in Texas who was allegedly interested in buying some of the trucks at $18,000 apiece. Aside from this hearsay claim, Young admitted that he had no written agreement or firm commitment for selling any of the trucks, those he planned to sell outright and those he planned to refurbish. Young also admitted that Southland’s alleged breach did not prevent First Alarm from making bids and fulfilling any orders for fire trucks or tankers.
The evidence offered shows that First Alarm did not have financing in place to fund the purchase of the additional trucks. Young spoke with Wilbur ‘Woody” MacDonald, Jr., the chief executive officer of Jackson Parish Bank, and Rex Garner Johnson, the president of Hodge Bank & Trust, about possible financing. But he did not make any formal application or arrange for any specific amount of financing. He claimed there was no need once he learned that Southland had sold the 76 remaining trucks. Even so, the deposition of testimony of MacDonald and Hodge indicates that First |1ftAlarm would not have obtained the funds needed to finance the purchase of the 76 remaining trucks. Moreover, in the absence of evidence as to what funds would have been available to First Alarm, it cannot be determined how many trucks it could have purchased.
MacDonald indicated that Jackson Parish Bank, which had a long history of loaning money to First Alarm and Young, would have been willing to finance some of the trucks, but that it never agreed to finance the purchase of any specific number of trucks or loan First Alarm a specific amount of money. He indicated that the bank could have loaned First Alarm up to its legal lending limit, which he believed was $600,000. However, he also indicated *1174 that the bank would want a cushion of about $25,000 to $50,000 below the legal lending limit. An affidavit by the bank’s vice-president, Jo Ann Teat, indicated that its legal lending limit in 1998 was $500,000 and that it was raised to $625,000 in March 1999. Significantly, Teat’s affidavit indicated that in February 1999, the combined balance of the outstanding loans by Jackson Parish Bank to First Alarm and Young totaled almost $500,000. This outstanding balance would have been considered part of the lending limit and greatly reduced the amount available to First Alarm for financing the purchase of additional trucks.
Hodge Bank & Trust financed First Alarm’s purchase of the three trucks in March 1999. Johnson stated in his deposition that his bank would have entertained a request to finance the purchase of 10 additional trucks, but it would have had to look “much harder” at and have “some conversation” about financing the purchase of 20 trucks.
In From our de novo review of the evidence submitted in support of and in opposition to Southland’s motion for summary judgment, we find that First Alarm has failed to show that there is a genuine issue of material fact as to whether it was damaged by the breach alleged in this case. Had First Alarm been allowed the opportunity to purchase the remaining 76 trucks at a rate of $13,000 per truck, the cost would have been $988,000. The evidence presented by the parties strongly suggests that it is unlikely that First Alarm or Young would have been able to secure the necessary funding from the two mentioned banks. Notably, First Alarm cannot say how many trucks it intended to purchase or how many trucks it could have purchased. While Young’s deposition and answers to interrogatories show that First Alarm was able to make a profit from the 10 trucks it did purchase and retrofit, without a firm showing as to the number of trucks it intended to buy and would have been able to finance, the amount of damages claimed is based solely on conjecture.
First Alarm did not show whether the additional trucks purchased would be sold as pumpers, tankers, or for the chassis alone. This number is necessary in order to determine, with any degree of specificity, the amount of profit that would have been obtained from the sale of the trucks. Without such details, the claim for loss of profits is merely speculative.
We find that First Alarm will not be able to meet the burden of proving, with any degree of specificity, that it sustained damages, including loss profits or otherwise. In the absence of proof of this necessary element of its breach of contract claim, we find that the trial court did not err in h {.granting the summary judgment and dismissing First Alarm’s claims against Southland.
CONCLUSION
For the reasons stated above, we affirm the trial court’s summary judgment in favor of Southland and dismissal of First Alarm’s claim. Costs of this appeal are assessed to First Alarm.
AFFIRMED.
SEXTON, J. (Ad Hoc), dissents with written reasons.
CARAWAY, J., dissents for the reasons assigned by Judge Sexton.